Matthias, J.
 

 The plaintiff’s claim is primarily based upon the contention that the rights of the mortgagor of real estate in a lease thereon, though executed subsequent to the mortgage, pass to the mortgagee upon its acquisition of the premises by purchase upon foreclosure, and are enforceable by it against the tenant. The question is thus presented in this case as to the effect of the foreclosure of such mortgage and the sale of the premises upon the rights' and obligations of the tenant of the premises in question under such
 
 *504
 
 lease, it not being a party to the foreclosure proceeding.
 

 It must be conceded that the decisions upon this question are not uniform; but we are of the opinion that the weight of authority and the better reasoned cases support the proposition that, the sale upon foreclosure having terminated the estate of the mortgagor, the lease, being subsequent and subordinate to the mortgage, was also terminated. The purchaser, therefore, could not have obtained any reversionary rights of the mortgagor and there could have been no privity of contract or estate between the tenant and the purchaser at the sale upon foreclosure. The rule applicable is concisely stated in the case of
 
 Teal
 
 v.
 
 Walker,
 
 111 U. S., 242, 28 L. Ed., 415, 4 S. Ct., 420, as follows: “Where, however, the lease is subsequent to the mortgage, the rule is well settled in this country, that, as no reversion vests in the mortgagee, and no -privity of estate or contract is created between him and the lessee, he cannot proceed either by distress or action, for the recovery of the rent.” This case was cited as authority by Judge Taft, in the case of
 
 Western Union Tel. Co.
 
 v.
 
 Ann Arbor Rd. Co.,
 
 90 F., 379, where the principle is stated in the following language: “It is, however, well settled that no contract of lease, which the mortgagor may make with respect to the land, either inures to the benefit of the mortgagee, or is binding on him. There is in such case no privity of either estate or contract between the mortgagee and the lessee of the mortgagor to bind either, and the entry of the mortgagee into possession under the mortgage merely avoids the lease, and releases the lessee from any obligation.”
 

 The principle applicable in the instant case was involved in the early case of
 
 Peters
 
 v.
 
 Elkins,
 
 14 Ohio, 344. There, as here, one who had purchased premises upon the foreclosure of a mortgage, executed prior to the lease upon the same premises, claiming rights
 
 *505
 
 under the lease, sought to recover from the tenant for use and occupation of the premises. His claim was rejected upon the ground that the relationship of landlord and tenant was not created, the court stating: “If the mortgagor holds the premises after sale, he does so in violation of the right of the real owner. He is a trespasser. * * * Now the tenant stands precisely upon the ground of the mortgagor, so far as the remedy of the purchaser, under the decree is concerned. He is under the mortgagor, and holds not by the consent of the purchaser or the mortgagee. He has not contracted to pay rent to the mortgagee or purchaser.”
 

 The same proposition is quite similarly stated by the Supreme Court of California in the case of
 
 McDermott
 
 v.
 
 Burke,
 
 16 Cal., 580, where it said: “The right of the lessor to the possession ends with the sale of the premises, or rather, with the deed by which the sale is consummated. The right of the tenant to such possession depends upon that of the lessor, and goes with it.”
 

 It was similarly held in the case of
 
 Burke
 
 v.
 
 Willard,
 
 243 Mass., 547, 137 N. E., 744. A more recent case involving a similar situation is that of
 
 Dolese
 
 v.
 
 Bellows-Claude Neon Co.,
 
 261 Mich., 57, 245 N. W., 569, in which reliance was placed on the decision in the
 
 Western Union Telegraph Co. case, supra.
 
 The court announced its conclusion that the foreclosure put an end to the lease and plaintiff could not recover the rents after the period of redemption expired. The court likewise held against the contention that a different rule was applicable where the lessee was not made a party to the foreclosure proceedings, stating that, though there is some authority for it, the best reasoned cases are all to the contrary.
 

 Other cases supporting the principle announced are
 
 McFarland Real Estate Co.
 
 v.
 
 Joseph Gerardi Hotel Co.,
 
 202 Mo., 597, 100 S. W., 577;
 
 Downard
 
 v.
 
 Groff,
 
 
 *506
 
 40 Ia.,
 
 597; Dugand
 
 v.
 
 Maguns,
 
 107 Cal., 243. In each of the eases cited, the tenant had not been made a party to the foreclosure proceedings. But, as stated in the
 
 Dolese case, supra,
 
 “the only effect of the failure to make a lessee a party to the foreclosure suit is in the remedy the mortgage purchaser must pursue against the lessee to recover possession.”
 

 It is our conclusion that the rights and obligations of the tenant under the lease did not extend beyond, but on the contrary terminated with, the estate of the mortgagor. Both were extinguished by the sale of the premises upon foreclosure.
 

 The plaintiff contends, however, that the relation of landlord and tenant on the same terms as the original lease was created by action of the parties subsequent to the foreclosure of the mortgage and the purchase of the property by the plaintiff. The question is thus presented whether a relationship which the parties did not create by express contract is to be implied from their acts and the same obligation and liability declared to exist between the tenant and the purchaser as had theretofore been created by the terms of the written lease entered into between mortgagor and the defendant.
 

 It does not follow from the mere payment of rent to the mortgagee by the tenant upon the direction of the mortgagor or thereafter to the purchaser of the land upon foreclosure (in this instance, the mortgagee) that the relation of landlord and tenant is thereby created upon the same terms as contained in the written lease under which the tenancy was established. The rule applicable is stated by 1 Tiffany on Landlord and Tenant, 411, Section 73 (3), as follows:
 

 “Instead of actually evicting the mortgagor’s tenant, the mortgagee may prefer to have such tenant remain in possession as his tenant, and if, upon his notification to the latter of his desire to this effect, the tenant, expressly or by implication, recognizes him as his
 
 *507
 
 landlord, ‘attorns’ to him, as it is frequently expressed, the tenant will thereupon cease to hold under the mortgagor and will hold under the mortgagee. Such ‘attornment’ to the mortgagee is in effect the acceptance of a new demise from the latter, and in fact it is not unusual for the mortgagee actually to make, and the mortgagor’s tenant to accept, a new lease. In case there is no new lease, definitely fixing the character and duration of the new tenancy, the tenant, by his mere acknowledgment of the mortgagee as his landlord, that is, by attorning to him, becomes, it would seem, in the first place his tenant at will, as does any other person who occupies under a bare permission, but such tenancy at will would ordinarily, by the tenant’s payment of a periodic rent to the mortgagee, be converted into a periodic tenancy.”
 

 Though the petition sets up the terms of the original lease and seeks to recover rentals under the terms of that instrument, the plaintiff now contends that if that lease was terminated a new lease upon the same terms and conditions and for the same period as the original lease has been created by the acts of the parties or is to be implied from their conduct. The facts relied upon are continuance in occupancy of the premises and continued payment of the portion of the rentals to the mortgagee-purchaser as theretofore directed by the mortgagor-lessor.
 

 Such tenancy would be without regard to the terms of the lease theretofore executed, which terminated with the sale of the premises, but would be affected by the implication arising from the payment and acceptance of the rental installments. Such payments, however, give rise to a periodic tenancy only, creating a liability for the rentals for such periods as the premises were occupied by the tenant; in this instance month to month. It cannot be more than that.
 

 
 *508
 
 The rental stipulated in the lease was a stated sum for the entire premises, and for the entire period of seventy months from September 1, 1931, to June 30, 1937, though payable in monthly installments. There was no agreement as to the amount to be paid for any designated portion of the premises. Hence it was an, absolute impossibility for the lease to have continued effective in accordance with its terms and conditions, because the plaintiff, being the owner of only a portion of the premises, was in no position to assure continued possession and enjoyment thereof by the defendant. The agreed statement of facts does not disclose how the premises covered by the lease were divided or what portion thereof was purchased by the plaintiff. However, the statement contained in the brief,of counsel for the defendant that the partition line between the premises purchased by plaintiff and the portion purchased by the other mortgagee runs obliquely through some of the rooms used by the defendant is unchallenged by counsel for the plaintiff.
 

 From the facts presented, there certainly can be no implied agreement upon the part of the defendant to continue in force for its full term the lease entered into with the former owner of the premises, and certainly none for the use and occupancy of only a portion of the premises involved. "We are of opinion that the liability of defendant is limited to the period it actually occupied the premises. It does appear that the parties hereto had for some time treated the installments paid each month as the monthly rental for the premises. From the facts presented, there arose an implied agreement to continue such payment so long as the occupancy continued.
 

 In our opinion, the judgment of the Court of Common Pleas' should have been thus modified instead of reversed by the Court of Appeals'. Accordingly, the judgment of the Court of Appeals is reversed and the
 
 *509
 
 judgment of the Common Pleas Court modified as above indicated and, as so modified, affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Day, Zimmerman, Williams, Myers and Hart, JJ., concur.