HEMBREE, Appellee,

v.

**MID–AMERICA FEDERAL Savings & Loan Association, Appellant.**

[Cite as *Hembree v. Mid–America Fed. S. & L. Assn.* (1989), 64 Ohio App.3d 144.]

Court of Appeals of Ohio,
Montgomery County.

No. 11007.

Decided June 27, 1989.

*Jose M. Lopez* and *Theodore A. Boggs,* for appellee.
*Thomas H. Pyper,* for appellant.

———

GRADY, Judge.

Appeal is taken from a judgment and order of the court of common pleas dismissing an action for forcible entry and detainer brought by appellant, Mid–America Federal Savings and Loan Association ("Mid–America"), against appellee, George Anthony Hembree.

The action below concerned possession of the real property located at 9118 Woodstream Lane, Washington Township, Montgomery County, Ohio. A companion case for money damages arising from the same controversy, brought by Hembree against Mid–America, was not determined by the court below and is not before us at this time.

The rights asserted by Mid–America have their origin in a promissory note in the amount of $141,600 and a securing mortgage executed in favor of Mid–America on August 28, 1980, by Clarence E. Carter, Jr. The real property was then titled in Carter, and the validity of Carter's title, note or mortgage is not in issue.

On September 18, 1986, Carter executed a written lease agreement for the premises at 9118 Woodstream Lane in favor of Hembree. The term of the lease began October 7, 1986 and ended December 7, 1988. Rent was established at $1,100 per month. The lease was not recorded. No notice of the lease was given to Mid–America.

Prior to the commencement of the lease, a contract in writing to purchase the real property was made between Carter and Hembree on October 1, 1986. The contract called for Carter to sell the premises to Hembree for $189,900, payable in a downpayment of $12,000, a further payment of $3,000 on December 1, 1988, and the balance payable on or before December 15, 1988, by which date Hembree was to secure financing. The contract gave Hembree a right to possession from October 1, 1986, citing the lease agreement. The contract of sale was not recorded. No notice of the contract was given to Mid–America.

Hembree began occupancy as contemplated in his lease. Hembree paid Carter $12,000 in October 1986, as required in the contract of sale. Hembree paid the monthly rental of $1,100 from October 1986 to July or August 1987, when he learned of the subject foreclosure and ceased payments. Hembree did not pay the $3,000 on December 1, 1988, as required by the contract because he could not then locate Carter.

Testimony suggests that in 1986, Carter encountered financial problems and became delinquent in his payments to Mid–America. On February 19, 1987, Carter met in Columbus with representatives of Mid–America to discuss his loan and proposals to bring it current.

Present at the Columbus meeting were Paul E. Norris and his superior, J.J. Renshaw, of Mid–America. Carter testified that he then advised Norris and Renshaw of the lease and sales contract to Hembree, and, in fact, showed them copies of the documents. Norris denied receiving any such information. Norris also testified that, though Carter was told that it might be possible to "massage the situation" to save the loan, Mid–America had by that time

resolved to foreclose.[1] No monies were then paid by Carter to Mid–America, including the $12,000 obtained from Hembree.

The foreclosure complaint filed by Mid–America on February 17, 1987, named as defendants Carter, Jane Doe (Carter's unknown wife), First National Bank (upon a certificate of judgment), and the Treasurer of Montgomery County. Carter did not answer, and a default judgment was obtained by Mid–America on April 29, 1987. An amended judgment and decree was filed May 27, 1987. A sheriff's sale was ordered and conducted. Mid–America purchased the premises at the sale for $144,000. The court confirmed the sale on July 22, 1987, and a sheriff's deed was thereafter delivered.

Neither Hembree nor his wife were joined as parties defendant to the foreclosure action by Mid–America. Hembree received no notice from Carter, who was served by mail at his new address. Hembree had no actual knowledge of the foreclosure until the sheriff's sale.[2]

The record suggests that Mid–America was aware that Hembree was in possession of the property before and during foreclosure proceedings. His possession was open and obvious. Shortly after the entry confirming sale, Mid–America filed a request for writ of restitution for possession of the premises on August 7, 1987. The request noted: "The property is currently occupied by George A. Hembree and Vanessa Hembree."

Hembree moved to intervene in the foreclosure action, but that motion was ultimately denied by the court on August 20, 1987. The day following, Hembree filed an action for money damages against Mid–America and Carter in the Court of Common Pleas.[3] On August 25, 1987, Mid–America filed an action against Hembree for forcible entry and detainer. That action was filed in the Kettering Municipal Court,[4] but was transferred to the Court of Common Pleas by reason of jurisdictional issues.[5] Thereafter, both actions were consolidated into the case *sub judice*, under case No. 87–2604, *Hembree v. Mid–America*.

Testimony and evidence were taken by the trial court on April 22, 1988. A decision and judgment entry was filed on April 26, 1988, dismissing the

---

**1.** Foreclosure was, in fact, filed two days earlier. *Mid–America v. Carter,* case No. 87–471.

**2.** Notice of the sheriff's sale was published in the Daily Court Reporter, a newspaper of general circulation in Montgomery County, on five occasions between May 19 and June 16, 1987. Hembree did not become aware of the sale through that notice.

**3.** *Hembree v. Mid–America,* case No. 87–2604.

**4.** *Mid–America v. Hembree,* case No. 87 CV 3325G.

**5.** Case No. 88–717.

forcible entry and detainer complaint of Mid–America. The court found that the Hembrees "were and had been in possession of these premises for a period of time well before Mid–America commenced foreclosure proceedings against the Defendant, Clarence Eugene Carter, covering these premises. The Hembrees were not made parties to the foreclosure proceeding, which proceeded to judgment, following which Mid–America purchased at the sheriff's sale. The fact that the Hembrees were in open and obvious possession of the premises was notice to the world of some interest in the premises. The Hembrees claim a contract interest in the premises. Under those circumstances, the Hembrees were necessary parties to the foreclosure proceeding so that they might set up any interest they may claim in the premises. The fact that the Hembrees claim some interest in the premises, and not having been parties to the foreclosure proceedings, defeats the claim of Mid–America to the right of immediate possession of these premises."

No determination was made of Hembree's claim for money damages.

On May 26, 1988, Mid–America filed its notice of appeal. It now brings the matter before the court, stating a single assignment of error.

### Assignment of Error

"The trial court erred by permitting appellee to continue possessing the premises and dismissing appellant's complaint."

The specific issue of law presented for our consideration is whether the possessory rights of Hembree acquired through his lease and executory contract of sale are superior or inferior to the possessory rights of Mid–America acquired through judicial sale. This question must be considered in the context of the action brought by Mid–America for forcible entry and detainer and praying for restitution of the premises, pursuant to R.C. Chapter 1923.

█ It is elementary that one who acquires an estate or interest in lands can take no greater interest than that held and conveyed by his grantor. Enforceability of that interest by the recipient will depend on three factors: the nature of the interest acquired, the person or interest against whom it is asserted, and the particular relief sought.

Both Hembree and Mid–America acquired their respective interests from the same grantor: Clarence E. Carter, Jr. Hembree's interests derive from a lease and contract of sale. Mid–America's interests derive from a prior mortgage and subsequent foreclosure, and confirmed judicial sale.

█ A mortgage is a conveyance of property to secure the performance of some obligation, usually a debt. The mortgage is given to enable the

mortgagee to enforce performance of the mortgagor's obligation. The mortgagor retains legal and equitable title, but upon breach of performance by the mortgagor legal title passes to the mortgagee. The mortgagee may then enforce his title by taking possession or by foreclosing the mortgage and selling the property. Until sale is confirmed, the mortgagor may redeem his interests through payment of the mortgage balance. This right, called an "equity of redemption," is a creation of equity. See, generally, 69 Ohio Jurisprudence 3d (1986), Mortgages, Sections 1–2.

A foreclosure is an action brought to enforce payment of the debt. A court has jurisdiction if the subject matter, the debt, and the parties bound by it, the creditor/mortgagee and the debtor/mortgagor, are properly served and before the court. They are necessary parties for purposes of jurisdiction. Upon a judgment on the debt, the court may order the mortgaged property sold to satisfy the obligation.

An action to sell the mortgaged property is called a "foreclosure" because, through judicial process, it will foreclose or cut off the rights in the property of all parties to the action. That includes the mortgagor, the mortgagee, subsequent holders of title, junior lienholders, and all other claimants whose claims or interests in the property attached subsequent to the mortgage. That entire bundle of rights is acquired by the purchaser at judicial sale, if he is a bona fide purchaser for value. However, in order to foreclose or cut off any such right, and in order to convey it to the bona fide purchaser for value, the party holding the right must be joined in the action. If he is not joined, that right survives in him and the bona fide purchaser for value takes subject to it. Thus, the holder of any such right or interest is a "necessary party" in order to foreclose and convey his right or interest, but he is not a "necessary party" for purposes of jurisdiction, sale and conveyance of title to a bona fide purchaser for value.

The foregoing general rules as to the survival of the interests of unjoined necessary parties is modified by the Ohio Recording Act, R.C. 5301.25. Unless and until recorded pursuant to the statute, deeds and other conveyances are fraudulent so far they relate to the title of a bona fide purchaser for value at a judicial sale. Such a purchaser takes free of the unrecorded junior lien. However, he can have no actual knowledge of the junior interest, and if he does he is not bona fide. *Varwig v. Cleveland, Cincinnati, Chicago & St. Louis RR. Co.* (1896), 54 Ohio St. 455, 44 N.E. 92. In that event, the purchaser takes subject to the junior interest.

There is no question that the trial court in the foreclosure action had jurisdiction to order and confirm a sale. The subject matter of the

proceeding was the debt. The parties to the debt, Mid–America and Carter, were properly before the court. The mortgage was an incident to the debt. After determination of default on the debt, the court had full authority to order the legal and equitable interests of Mid–America sold and to cut off or foreclose the interests of all persons joined in the action. A bona fide purchaser for value takes all interests and rights joined in the sale proceeding. He is, after confirmation of sale, entitled to possession of the premises sold and to all rents and profits arising therefrom. 58 Thompson, Real Property (1978), Section 2743.

Mid–America, the purchaser at judicial sale, has brought an action for forcible entry and detainer, alleging that Hembree's possession is "unlawful" and requesting restitution of the premises. Hembree's rights derive from those of Carter, and were acquired by lease and executory contract of sale. Whether they include the right of possession superior to Mid–America's right of possession as a purchaser for value is the question before us.

Carter had the right to possession and quiet enjoyment of the property when he leased it to Hembree. Carter thereby conveyed those interests and promised to protect Hembree's right to them. Carter's power to do so was derived from his title. Upon default, Carter was divested of title. Carter thereby lost his power to protect Hembree and breached his agreement with Hembree.

According to a majority of courts, a lessee who is not joined in the foreclosure action does not thereby lose his right to possession or quiet enjoyment. The sale is simply treated as being of the reversion subject to the lease. The purchaser acquires the rights and duties of the mortgagor and becomes the new lessor. 1 American Law of Property (1952), Section 3.49.

The foregoing paragraph states the rule in the majority of jurisdictions concerning survival of the rights of a lessee, joined or unjoined, after foreclosure. However, Ohio has adopted the opposite view. In *New York Life Ins. Co. v. Simplex Products Corp.* (1939), 135 Ohio St. 501, 14 O.O. 396, 21 N.E.2d 585, the Supreme Court held that:

" * * * [T]he sale upon foreclosure having terminated the estate of the mortgagor, the lease, being subsequent and subordinate to the mortgage, was also terminated. The purchaser, therefore, could not have obtained any reversionary rights of the mortgagor and there could have been no privity of contract or estate between the tenant and the purchaser at the sale upon foreclosure. * * *

" * * *

"It is our conclusion that the rights and obligations of the tenant under the lease did not extend beyond, but on the contrary, terminated with, the estate of the mortgagor. Both were extinguished by the sale of the premises upon foreclosure." *Id.* at 504 and 506, 14 O.O. at 397 and 398, 21 N.E.2d at 586 and 587.

In *Simplex*, there was no joinder of the lessee in the foreclosure action, and he had no actual knowledge of it. Further, the action was brought by the purchaser at judicial sale to continue a prior lease and collect rental from the lessee. The basis for departure from the majority rule, however, has been explained according to the nature of the interest concerned. Where interests are of a type properly determinable in foreclosure proceedings, they survive the foreclosure if not joined. Among that type are title, liens, or similar interests. Where interests are not of that type, among which are to be found the personal rights of possession and quiet enjoyment conveyed by lessor to lessee, joinder is not necessary and they are foreclosed absolutely. *Prudential Ins. Co. v. Bull Market, Inc.* (C.P. Ohio 1979), 66 Ohio Misc. 9, 20 O.O.3d 115, 420 N.E.2d 140.

Appellee Hembree urges us to follow a different rule. He argues that when a tenant is in open and notorious possession of real estate under an apparent claim of interest, notice is given to a purchaser of the land and he is chargeable with any equitable or legal right of the party in possession. *Kemp v. Feldman* (1948), 84 Ohio App. 154, 39 O.O. 173, 81 N.E.2d 319; *State Fid. S. & L. Assn. v. Wehrly* (C.P.1970), 25 Ohio Misc. 221, 54 O.O.2d 314, 263 N.E.2d 801; *Schloss v. Brown* (1920), 13 Ohio App. 294; *Huddleston v. Ward* (Mun.Ohio 1946), 46 Ohio Law Abs. 225, 33 O.O. 489, 68 N.E.2d 580; *Dunkel v. Hedges* (1921), 15 Ohio App. 259; and *Soltesz v. Carter* (C.P.1949), 55 Ohio Law Abs. 117, 87 N.E.2d 599. The last case found that a purchaser at judicial sale is not a bona fide purchaser for value if he had actual notice. Also cited is *Davis v. Boyajian, Inc.* (C.P.1967), 11 Ohio Misc. 97, 40 O.O.2d 344, 229 N.E.2d 116, which distinguished *Simplex* because it attempted to hold a tenant to rent rather than oust him from possession.

Though the foregoing line of authority is persuasive, the rule of law urged begs the question. Regardless of the form of notice or the equities, if the underlying right of the tenant is cut off at foreclosure, failure to join is of no consequence. We agree with the analysis in *Bull Market* that the rights of possession and quiet enjoyment conveyed through the lease are personal rights; their existence derives from the lessor's title, and they are extinguished upon the foreclosure of that title and the interests incident to it. Absent authorization or consent by the mortgagee to execute the lease, a purchaser at judicial sale will not take subject to it. *Cassilly v. Rhodes* (1843),

12 Ohio 88. The lease then will be subject to a mortgage which, as here, has priority over it. *Davis v. Boyajian, Inc., supra.*

We find, in accord with *Simplex, supra,* that the judicial sale and confirmation wherein Mid–America purchased and acquired the rights of mortgagor and mortgagee extinguished the rights of possession acquired by Hembree in his lease junior in time and priority to the mortgage. As against Mid–America, Hembree's possessory rights under the lease are nonexistent. The lease, alone, will not protect Hembree from an action for forcible entry and detainer by Mid–America requesting restitution of the premises.

Hembree also claims rights of possession under the contract of sale made between Carter and Hembree on October 1, 1986. The contract, by reference to the lease, granted Hembree possessory rights from that date to December 7, 1988, the expiration date of the lease. By implication it extended those rights to December 15, 1988, the date specified for performance. Both of those dates are substantially later than the dates of the judicial sale and the confirmation of sale, July 22, 1987.

Hembree paid valuable consideration, $12,000, for his right to purchase the property on or before December 15, 1988. On the date of sale and confirmation that contract was executory.

A vendee under an executory contract for the sale and purchase of real property has an equitable lien or estate in the land in the amount of the purchase price. *Wayne Bldg. & Loan Co. v. Yarborough* (1967), 11 Ohio St.2d 195, 40 O.O.2d 182, 228 N.E.2d 841; *Cleveland Trust Co. v. Bouse* (1955), 163 Ohio St. 392, 56 O.O. 350, 127 N.E.2d 7. Those interests continue until cut off by the rights of a bona fide purchaser, absent the influence of a statute such as the recording act. *Shaker Corlett Land Co. v. Cleveland* (1942), 139 Ohio St. 536, 23 O.O. 27, 41 N.E.2d 243.

Hembree did not record his contract and does not have the protections of the recording act. However, where a purchaser for value takes at a sale with notice of equitable rights of a vendee, those rights are not cut off because they were unrecorded. *Wayne v. Yarborough, supra.*

The trial court found that Mid–America was aware of Hembree's equitable interests in the land; his possession was open and obvious, and Carter informed Mid–America in February 1987, that Hembree had a contract of purchase.

" 'One having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts he might have discovered by diligent inquiry. Whatever is notice enough to excite the attention of a prudent man and put him on his guard is notice of everything to which such

inquiry might have led * * *.' * * * One is chargeable with the notice which every person of ordinary prudence would necessarily have from the nature of the transaction * * * particularly where it is his business to know the facts of which notice is to be had." *Wayne v. Yarborough, supra,* 11 Ohio St.2d at 202, 40 O.O.2d at 186, 228 N.E.2d at 847, citing other cases.

The record contains evidence competent and adequate to support the conclusion of the trial court that Mid–America purchased at judicial sale with notice of Hembree's rights under the executory contract. Whether judicial sale foreclosed those rights or Mid–America purchased subject to them varies with the right concerned.

 Carter's right of possession was subject to the prior mortgage. The right of possession acquired by Hembree from Carter was also subject to that prior mortgage. Upon Carter's default, his possessory rights, and those acquired from him by Hembree, passed through the mortgage to the mortgagee. The purchaser at judicial sale acquired all rights of the mortgagee, including the right of possession. The purchaser's right of possession is, then, absolutely superior to that of a foreclosed mortgagor's grantee under an executory contract of sale even though the purchaser had notice of the vendee's interest and failed to join the vendee in the foreclosure action. *Frische v. Kramer's Lessee* (1847), 16 Ohio 125. The possessory rights of a vendee, joined or unjoined cannot survive a foreclosure of the possessory rights of the vendor from whom he takes. Notice of the vendee's interests will not defeat a purchaser at judicial sale. The purchaser may bring an action in ejectment to enforce his right to possession. *Childs v. Childs* (1859), 10 Ohio St. 339.

 An equity of redemption is a right incident to a mortgage. It is a right, retained by the mortgagor, to perform the mortgage obligation after default and to thereby "redeem" his title from the mortgage conveyance. It is an absolute right and may be exercised until confirmation of sale. *Citizens Loan & Savings Co. v. Stone* (1965), 1 Ohio App.2d 551, 30 O.O.2d 584, 206 N.E.2d 17.

 A vendee in a contract of sale acquires his vendor's equity of redemption and has the right to redeem the mortgaged premises. In order to bar that right through foreclosure of the mortgage, the vendee must be made a party to the foreclosure. *Frische v. Kramer's Lessee, supra; Scott v. Hickox* (1857), 7 Ohio St. 88. *Childs v. Childs, supra.* That right in the vendee under an executory contract of sale survives any foreclosure wherein the vendee was not joined and the purchaser has notice of the vendee's rights. *Wayne S. & L. Co. v. Young* (1976), 49 Ohio App.2d 35, 3 O.O.3d 107, 358

N.E.2d 1380. A vendee who was not made a party to the foreclosure has the right to redeem from the sale as against the purchaser at the foreclosure sale. 69 Ohio Jurisprudence 3d (1986), Mortgages, Section 252.

■ For the foregoing reasons, Hembree's continued possession is "unlawful" as against demands for possession by Mid–America. Mid–America is entitled to bring an action for forcible entry and detainer against Hembree and to have restitution of the premises, Hembree's lease and contract notwithstanding. The trial court erred in holding to the contrary.

Hembree's equity of redemption survives and remains a burden on Mid–America's clear title. Mid–America may extinguish that equity by payment of its value to Hembree. Mid–America may institute a *de novo* proceeding to foreclose on Hembree's lien junior to that acquired by Mid–America at judicial sale. Mid–America may also bring an action to compel Hembree to redeem, and, if he fails to do so, forever bar his claim. Hembree may seek to enforce his rights: the right to receive a deed upon payment of the amount of Carter's indebtedness at default, or the right to receive reimbursement of the amount paid Carter, if such right exists. See 55 American Jurisprudence 2d (1971), Mortgages, Sections 852–878.

■ It would appear that Mid–America is not entitled to rent from Hembree for the term from judicial sale until Hembree vacates the property. Hembree's rent obligation arises from his lease, but Mid–America cannot rely on the lease to enforce a rent obligation. *Simplex, supra.* Otherwise, there was no privity of estate or contract between Mid–America and Hembree, and no agreement was reduced to writing as required for enforcement by the statute of frauds. R.C. 1335.04. To recover rent, Mid–America must enter into a new lease. *Peters v. Elkins* (1846), 14 Ohio 344.

The judgment of the trial court is reversed. The matter is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WOLFF, P.J., and WILSON, J., concur.