BRANDON/WIANT COMPANY, Appellant,

v.

TEAMOR, Appellee.

[Cite as *Brandon/Wiant Co. v. Teamor* (1998), 125 Ohio App.3d 442.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72040.

Decided Jan. 26, 1998.

*Benesch, Friedlander, Coplan & Aronoff, L.L.P.*, and *Stephen Cheatham*, for appellant.

*Teamor, Lichko & Brown, Gregory M. Lichko* and *Roy J. Schechter*, for appellee.

SPELLACY, Judge.

Plaintiff-appellant The Cadle Company ("appellant") appeals from the grant of summary judgment in favor of defendant-appellee Ricardo B. Teamor ("Teamor") in an action brought to collect rent.

Appellant assigns the following error for review:

"I. The trial court erred to the prejudice of plaintiff–appellant The Cadle Company in (i) analyzing this case in light of *New York Life Ins. Co. v. Simplex Products Corp.*, 135 Ohio St. 501, 14 O.O. 396, 21 N.E.2d 585 (1939), (ii) applying the legal principles enunciated therein to the facts of this action, and (iii) consequently granting summary judgment on the supplemental complaint in favor of defendant–appellee Ricardo B. Teamor and against plaintiff–appellant The Cadle Company."

Finding the assignment of error to have merit, we reverse the judgment of the trial court.

## I

On April 19, 1991, Teamor entered into an agreement with Midwestern Superior Associates ("Midwestern") to lease office space in the Superior Building

located in Cleveland. The lease provided for a five-year term beginning on May 1, 1991. One provision of the agreement provided:

"Lessee covenants and agrees, in the event any proceedings are brought for the foreclosure of any mortgage, to attorn to the purchaser upon any such foreclosure sale and to recognize such purchaser as the Lessor under this Lease. Lessee agrees to execute and deliver at any time and from time to time, upon the request of Lessor or of any such holder, any instrument which, in the judgment of Lessor, may be necessary or appropriate in any such foreclosure proceeding or otherwise to evidence such attornment. Lessee further waives the provisions of any statute or rule of law now or hereafter in effect, which may give or purport to give Lessee any right or election to terminate or otherwise adversely affect this Lease or the obligation of Lessee hereunder in the event any such foreclosure proceeding is brought, and agrees that this Lease shall not be affected in any way whatsoever by any such foreclosure proceeding."

On December 31, 1991, American Savings Bank FSB filed an action to foreclose on Midwestern's mortgage. While that action was pending, the property was managed by appellant, an assignee of American Savings Bank FSB. Appellant had purchased the mortgage note and deed from American Savings Bank FSB.

Teamor and Midwestern entered into an amendment to the lease on March 15, 1993, whereby Teamor agreed to rent additional space in the Superior Building. The parties amended the lease a second time on November 18, 1994. The second amendment provided for the lease of additional premises at the Superior Building by Teamor. Both amendments stated that all of the other terms of the original lease remained in effect.

On January 31, 1995, the Brandon/Wiant Company was appointed as the receiver for the property. In April 1995, Teamor leased additional space in the Superior Building from the receiver. On September 5, 1995, appellant purchased the Superior Building at a foreclosure sale. On September 22, 1995, Teamor informed receiver Brandon/Wiant that he would be vacating his leased premises at the Superior Building by October 1, 1995, six months before the end of the leasehold on April 30, 1996. Teamor paid no rent after September 30, 1995.

The sale of the property to appellant was confirmed by the trial court on October 6, 1995. Appellant obtained the sheriff's deed on October 10, 1995. Appellant recorded the deed on May 24, 1996.

On December 18, 1995, receiver Brandon/Wiant filed a complaint for rent against Teamor. Brandon/Wiant asked to recover rental payments from Teamor for October, November, and December 1995. Teamor answered and counter-claimed for breach of the lease due to the failure to maintain the building in a good and proper working condition. On June 11, 1996, Brandon/Wiant filed a

supplemental complaint in which it asked for the remainder of the rent owed under the lease agreement.

On June 27, 1996, appellant was substituted as the plaintiff in the action as its deed had been recorded. On August 6, 1996, Teamor amended his counterclaim to include a claim for lost legal work because a package was not forwarded to Teamor's new office.

On December 13, 1996, Teamor filed a motion for summary judgment in which he argued that *New York Ins. Co. v. Simplex Products Corp.* (1939), 135 Ohio St. 501, 14 O.O. 396, 21 N.E.2d 585, was dispositive of the case. Based on *Simplex,* Teamor argued that the lease agreement was extinguished when appellant purchased the Superior Building out of foreclosure on September 5, 1995, and, therefore, appellant could not recover any rental payments after that date, as there was no privity of contract between the parties. Appellant opposed the motion by arguing that the provision in the lease quoted above made *Simplex* distinguishable from the instant case. Appellant filed a motion asking for a judgment on the pleadings on Teamor's counterclaim. The trial court denied appellant's motion for judgment on the pleadings but granted Teamor's motion for summary judgment. Teamor dismissed his counterclaim with prejudice. Appellant has appealed the trial court's ruling on Teamor's motion for summary judgment.

## II

In its assignment of error, appellant contends that the trial court erred by granting Teamor's motion for summary judgment. Appellant argues that *Simplex* is inapplicable based upon the terms of the lease agreement between Teamor and Midwestern.

This case was decided by summary judgment. Civ.R. 56(C) provides that summary judgment is proper if the trial court determines that "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Summary judgment is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615. Summary judgment is not appropriate where the facts are subject to reasonable dispute when viewed in a light favorable to the nonmoving party. *Mers v. Dispatch Printing Co.*

(1985), 19 Ohio St.3d 100, 104, 19 OBR 261, 264–265, 483 N.E.2d 150, 154. The moving party is entitled to summary judgment if the nonmoving party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273.

The first issue to be addressed is whether *Simplex* is controlling of the instant case. In *Simplex*, the court held that a foreclosure sale terminates a prior lease agreement between the mortgagor and a lessee. The purchaser does not obtain any reversionary rights of the mortgagor. Therefore, there is no privity of contract between the purchaser and the lessee that would allow the purchaser to recover any rents from the lessee. The court quoted from *Peters v. Elkins* (1846), 14 Ohio 344, 1846 WL 38, which stated that the lessee does not hold the premises under the consent of the purchaser and has not contracted to pay rent to the purchaser. *Id.,* 135 Ohio St. at 505, 14 O.O. at 397–398, 21 N.E.2d at 586–587.

In the instant case, Teamor did contract to pay rent to the purchaser. The lease agreement between Teamor and Midwestern stated that, if foreclosure occurred, Teamor agreed to attorn to the purchaser and to recognize the purchaser as the lessor under the lease. Although Teamor argues that the entire lease, including this provision, terminated upon the foreclosure sale, it is clear that the parties contemplated the possibility of a foreclosure sale and agreed that the lease would continue with the purchaser becoming the lessor.

The interpretation of a written agreement is a matter of law for the court. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146. Generally, it is presumed that the intent of the parties to a contract resides in the language they chose to employ in the agreement. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 509 N.E.2d 411. Courts will not construe contract language that is clear and unambiguous on its face. *Logsdon v. Fifth Third Bank of Toledo* (1994), 100 Ohio App.3d 333, 339, 654 N.E.2d 115, 118–119. When the contract terms are clear and unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 597 N.E.2d 499. Rather, the court must give effect to the language of the contract. *Seringetti Constr. Co. v. Cincinnati* (1988), 51 Ohio App.3d 1, 553 N.E.2d 1371.

The lease agreement is clear and unambiguous on its face. The parties agreed that Teamor would attorn to a purchaser. The contract provided that a purchaser at a foreclosure sale would become the lessor. Teamor expressly agreed to

attorn to appellant and cannot now seek to avoid what he was obligated to do pursuant to the lease.

"The right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to write and to speak without restraint. Responsibility for the exercise, however improvident, of that right is one of the roots of its preservation." *Blount v. Smith* (1967), 12 Ohio St.2d 41, 47, 41 O.O.2d 250, 253, 231 N.E.2d 301, 305.

Because the lease agreement contained this attornment clause, *Simplex* is distinguishable and does not control the outcome of this case. The plain terms of the lease provide that Teamor will attorn to the purchaser of the property in a foreclosure sale and that the terms and conditions of the agreement will remain in force as between Teamor and the purchaser.

■ Teamor asserts that, under the lease, it was necessary for appellant to have Teamor execute a written agreement evidencing the attornment. Teamor argues that because this did not take place, the attornment clause never took effect and the lease terminated upon the judicial sale. However, the lease provides that a written instrument be provided by Teamor upon the request of the purchaser. An instrument was not required for this clause to take effect but needed to be executed only if the purchaser thought it appropriate. The lack of a written document such as an estoppel certificate evidencing the attornment is not fatal to appellant. The lease agreement itself is sufficient to create an attornment.

■ Teamor also argues that the attornment clause is void as against public policy. Teamor asserts that the public-policy concern present is that a tenant should not be forced to abide by a lease with the purchaser at a foreclosure sale with whom the tenant has no privity of contract. Appellant points out that a new owner may be unwilling to perform the promises made to a tenant at the time the parties entered into the lease.

■ In general, parties have complete freedom to enter into a contract. However, that freedom is limited by public-policy reasons. *Lake Ridge Academy v. Carney* (1993), 66 Ohio St.3d 376, 613 N.E.2d 183. Public policy is a legal principle which declares that no one can lawfully do that which has a tendency to be injurious to the public welfare. *Chickerneo v. Society Natl. Bank* (1979), 58 Ohio St.2d 315, 320, 12 O.O.3d 298, 300–301, 390 N.E.2d 1183, 1186. The principle of public policy must be applied with caution and is limited to those circumstances patently within the reasons upon which the doctrine rests. *Id.* At best, public policy is an uncertain and indefinite term. *Lamont Bldg. Co. v. Court* (1946), 147 Ohio St. 183, 185, 34 O.O. 73, 74–75, 70 N.E.2d 447, 448. Judges must apply the doctrine of public policy with caution so as not to infringe

on the parties' rights to make contracts that are not clearly opposed to some principle or policy of law. *Id.*

Teamor's public policy arguments are unpersuasive. Teamor certainly has the right to enforce the obligations owed him by the lessor under the lease against appellant. The lease is in full effect against both parties to the agreement. Teamor agreed that any purchaser of the property would become the lessor under the lease agreement. There is nothing in the record reflecting that Teamor was in an unequal bargaining position with Midwestern at the time the lease was entered into by the parties. Parties of equal bargaining power are free to enter into any agreement the terms of which are enforceable by law. *New Towne L.P. v. Pier 1 Imports (U.S.), Inc.* (1996), 113 Ohio App.3d 104, 680 N.E.2d 644. Absent an overwhelming public-policy concern, the concept of freedom to contract is considered to be fundamental to our society. *Royal Indemn. Co. v. Baker Protective Serv., Inc.* (1986), 33 Ohio App.3d 184, 515 N.E.2d 5. The concerns raised by Teamor do not meet the standard of being an overwhelming public-policy concern the violation of which would be injurious to the public welfare.

The trial court erred by granting summary judgment to Teamor on the basis of *Simplex.*

Appellant's assignment of error is well taken.

*Judgment reversed*
*and cause remanded.*

TIMOTHY E. McMONAGLE, P.J., and ROCCO, J., concur.