Defendant-appellant, Lynn S. Lawhun, appeals the denial by the Brown County Court of Common Pleas of her writ of entry and writ of prohibition in a foreclosure action.
On March 1, 1994, appellant and her then husband, John S. Lawhun, signed a note with plaintiffs-appellees, Louis Bramel and his wife, Clara Bramel, for $85,000. The terms of the note required appellant and Lawhun to pay $200 per month beginning April 1, 1994. In addition, the note required appellant and Lawhun to pay ten percent interest "on the remaining principal balance owed on February 1st of each year," beginning February 1, 1995. The note was secured by a mortgage on two properties owned by appellant and her husband: A parcel of land located in Adams County, Ohio and a parcel of land located on Gooselick Road, in Jefferson Township, Brown County, Ohio.
On February 6, 1995, appellant and Lawhun entered into an agreement by which Lawhun agreed to be "responsible for insurance on farm. The entire interest payment and monthly farm payment[.] John pays taxes on house and farm." The agreement was notarized by appellee Clara Bramel in her capacity as a notary. Appellant and Lawhun were subsequently divorced on April 7, 1995. By divorce decree filed that day, Lawhun was to
 receive the farm in Adams County free and clear of any claims of [appellant] and he shall assume the debt on said farm and Brown County house and hold [appellant] harmless for said debt. Further [Lawhun] shall have [appellant's] house in Ripley removed from the mortgage by 3/15/2000, thus, giving [appellant] the house free and clear of any claim by him or anyone else. Further [appellant] shall be responsible for insurance and paying the taxes on the Ripley house.
It appears from a thorough review of the record that the Ripley house in which appellant then resided with her children as part of the divorce decree was part of the Brown County property on Gooselick Road subject to the mortgage held by appellees.
On June 4, 1996, appellees filed a complaint in the trial court seeking foreclosure of the Adams and Brown Counties properties and, if necessary, a deficiency judgment against appellant and Lawhun. Appellees' complaint alleged that appellant's and Lawhun's payments on the note were in default since February 1, 1996. Appellant filed her answer on July 17, 1996 in which she denied being in default. Appellant's answer also asserted that appellees, "by written agreement, ha[d] excused [her] from the payment of the note and mortgage." The written agreement referred to by appellant is the February 6, 1995 agreement executed by appellant and Lawhun. Appellant's answer further asserted that "[i]n reliance upon this agreement, [appellant had] permitted the real estate to be transferred and remain in the name of * * * John S. Lawhun and to become a part of the [divorce decree]."
On June 19, 1997, appellees filed a motion for summary judgment. By entry filed October 7, 1997, the trial court granted appellees' motion and ordered appellant and Lawhun to pay appellees $88,556 plus ten percent interest per year from May 1, 1996, or suffer foreclosure of the mortgaged properties.
On December 1, 1997, appellant filed a motion to "order a Sheriff Stop Sale on 7568 Gooselick Property * * *." The record shows that the mortgaged properties were advertised to be sold by the Brown County Sheriff on December 1, 1997. The mortgaged properties were subsequently sold for a total sum of $100,000.[1] By entry filed December 18, 1997, the trial court approved and confirmed the sale, distributed the proceeds, and entered a deficiency judgment of $6,531.07 against appellant and Lawhun.
On January 30, 1998, appellant filed a writ of entry and a writ of prohibition in the trial court which stated in relevant part:
 I, Lynn Lawhun, am making writ of Prohibition to Possession of Tom Shinkle to safeguard my right to liberty and due process of law. * * * Valid defense prohibiting writ of possession is non-payment of foreclosure was caused by circumstances beyond my control and Mr. Shinkle was aware of this situation as he has been offering me $30,000 for the past 2 years and Bramels would not let me accept it, yet they conspired with him, as he bought it at Sheriff sale for $25,000. leaving me penniless instead of profitable as mortgage was only $20,000.
 I, Lynn Lawhun, am making writ of entry to protect my constitutional right to recover land wrongfully withheld from me a [sic] I have been true owner for 10 years with superior right of possession and use of the land until impending actions against Bramel and John (ex) are justly processed by law.
* * *
 I, Lynn, did knowingly sign off debt in good faith that it would be recorded as a substitution of parties in 1995, filed contempt on ex 1995, and filed, answered, defended, and objected in timely manor [sic], had prominent evidences and witnesses.
 Being indigent, my right of redemption of property R.C. 2329.33 was impossible except by resale of property at profit as agreed by Plaintiff attorney then contradicted therefore stripping me of my rights. Being indigent, I could not afford bankruptcy.
 Tom Shinkle has offered me $30,000 in front of witnesses, and Bramels would not let me sell to him to clear my $20,000 mortgage, yet he purchased it for $25,000 at Sheriff Sale clearly proving conspiracy to defraud by Louis Bramel et al. In 1995, I offered pay [sic] off to Bramels and they refused.
 I had buyers and realtors as valid witnesses that I had profitable intentions and buyers, yet Louis Bramel rebought farm with intention to conspire with John Lawhun to refinance even with him in default. Again, conspiracy to defraud was and is evident with respectable witnesses. (Emphasis sic.)
By judgment entry filed February 4, 1998, the trial court denied both writs as follows: "[t]he Court finds that the Entry Confirming Sale is indeed proper, and that there are no bases for any allegations of fraud or misrepresentation justifying relief. * * * The Court further finds that this Court is not vested with jurisdiction over Writs of Prohibition. * * *" Appellant, pro se, timely appealed the denial of both writs.
Appellant's brief fails to raise any specific assignment of error in violation of App.R. 16(A)(3) and Loc.R. 11(B)(3). However, in light of appellant's pro se status and Ohio's policy that cases should be decided on their merits, Perotti v. Ferguson (1983), 7 Ohio St.3d 1, 3, we will construe appellant's brief as contending that the trial court erred in denying her writ of entry and her writ of prohibition.
We first start with the trial court's denial of appellant's writ of prohibition.
 The writ of prohibition is an extraordinary judicial writ issuing out of a court of superior jurisdiction and directed to an inferior tribunal properly and technically denominated such, or to an inferior ministerial tribunal possessing incidentally judicial powers and known as a quasi-judicial tribunal, or even in extreme cases to a purely ministerial body, commanding it to cease abusing or usurping judicial function. * * * The legitimate scope and the purpose of the writ is to keep inferior courts within the limits of their own jurisdiction, and to prevent them from encroaching upon the jurisdiction of other tribunals. * * * (Emphasis sic.)
State ex rel. Nolan v. ClenDening (1915), 93 Ohio St. 264, 270. The foregoing definition unequivocally shows that trial courts do not have jurisdiction to issue writs of prohibition. See State v. Bauer (Oct. 9, 1984), Clermont App. No. CA84-04-029, unreported. We therefore find that the trial court did not err in denying appellant's writ of prohibition.
We now turn to the trial court's denial of appellant's writ of entry. A writ of entry is "[a] real action to recover the possession of land where the tenant (or owner) has been disseised or otherwise wrongfully dispossessed." Black's Law Dictionary (5 Ed. 1979) 1443.
 In old English practice, * * * [i]ts object was to regain the possession of lands of which the demandant * * * had been unjustly deprived by the tenant of the freehold * * * and hence it belonged to the possessory division of real actions. It decided nothing with respect to the right of property, but only restored the demandant to that situation in which he was (or by law ought to have been) before the dispossession committed. (Emphasis sic.)
Black's Law Dictionary (5 Ed. 1979) 479.
A fair reading of appellant's brief indicates that appellant argues that the trial court erred in ordering foreclosure of the Brown County property and that she should be entitled to the proceeds of the foreclosure for the following reasons: First, appellant alleges that there were several conflicts of interest throughout the proceedings with regard to (1) the Brown County prosecutor; (2) Clara Bramel in notarizing appellant's agreement with Lawhun; and (3) appellant's divorce attorney in not representing her to the best of his ability regarding the Brown County property while representing the property's purchaser.
Second, appellant argues that she was to be awarded the Brown County property free and clear of all claims as part of the divorce decree. Finally, appellant argues that the agreement she and Lawhun signed on February 6, 1995 and which was notarized by Clara Bramel constituted an assignment of the mortgage from appellant to Lawhun, and thus released her from the mortgage. It is appellant's contention that "the assignment * * * is valid prima facie evidence that my debt has been pardoned since Feb. 1995 as I had -0- payment and -0- interest due by me since then as ex-husband assumed all responsibilities and payments and interest * * * since then."
Appellant cites a string list of statutory provisions from various chapters of the Ohio Revised Code for the general proposition that they "might should pertain to the errors of this case[.]" A review of these provisions reveals (1) that many of the provisions do not exist in the current version of the Revised Code; (2) that if they do exist, they are either inapplicable to the case at bar or lack relevancy; and (3) that the propositions set forth in these provisions considerably differ from the propositions appellant cites the provisions for.
Appellees cite R.C. 1303.49(A) in support of their argument that summary judgment was properly granted to them, even though the summary judgment is not before this court on appeal. Moreover, a review of R.C. 1303.49, which governed the contract of maker, drawer, and acceptor, shows that it was repealed on August 19, 1994.
Turning to appellant's arguments, we note at the outset that while appellant might have claims against the Brown County prosecutor and her divorce attorney with regard to the alleged conflicts of interest, and Lawhun, her ex-husband, under the divorce decree, we decline to address these claims as this case is nothing more than a straight foreclosure action.
R.C. 1303.01(A)(7) defines "maker" as "a person who signs or is identified in a note as a person undertaking to pay." A signature in the lower right-hand corner of an instrument indicates an intent to sign as the maker of the note. Huron Cty. Banking Co., N.A. v. Knallay (1984), 22 Ohio App.3d 110, 113. The record shows that the signatures of both appellant and Lawhun appear in the lower right-hand corner of the 1994 note to appellees. Appellant and Lawhun are therefore makers of the 1994 note.
"A person is not liable on an instrument unless the person signed the instrument * * *." R.C. 1303.41(A). "Except as otherwise provided in the instrument, two or more persons who have the same liability on an instrument as makers * * * are jointly and severally liable in the capacity in which they sign." (Emphasis added.) R.C. 1303.14(A). Because they both signed the note as makers, appellant and Lawhun are jointly and severally liable on the note.
In Hembree v. Mid-America Fed. S. L. Assn. (1989), 64 Ohio App.3d 144, at 151-152, the Second Appellate District defined a mortgage and the rights and liabilities of the parties to a mortgage as follows:
 A mortgage is a conveyance of property to secure the performance of some obligation, usually a debt. The mortgage is given to enable the mortgagee to enforce performance of the mortgagor's obligation. The mortgagor retains legal and equitable title, but upon breach of performance by the mortgagor legal title passes to the mortgagee. The mortgagee may then enforce his title by taking possession or by foreclosing the mortgage and selling the property. Until sale is confirmed, the mortgagor may redeem his interests through payment of the mortgage balance. This right, called an "equity of redemption," is a creation of equity.
The mortgagor's equity of redemption is a right "to perform the mortgage obligation after default and to thereby `redeem' his title from the mortgage conveyance. It is an absolute right and may be exercised until confirmation of sale." Id. at 156. It is undisputed that appellant and Lawhun are the mortgagors and that appellees are the mortgagees.
Appellant contends that the February 6, 1995 agreement she and Lawhun signed constituted an assignment of the mortgage which released her from the mortgage under R.C. 5301.28, and in essence modified the 1994 note. We disagree.
"[T]he obligation of a party to an instrument to pay the instrument [the note] may be modified, supplemented, or nullified by a separate agreement of the obligor [appellant] and a person entitled to enforce the instrument [appellees], if the instrument is issued * * * in reliance on the agreement or as part of the same transaction giving rise to the agreement." R.C. 1303.15. It is undisputed that the agreement between appellant and Lawhun was not part of the same transaction that gave rise to the 1994 note. Nor was the note issued in reliance of appellant's and Lawhun's agreement, especially since the agreement was entered into eleven months after appellant and Lawhun signed the note. The note was therefore not modified by the agreement between appellant and Lawhun.
Nor did the agreement release appellant from the mortgage under R.C. 5301.28. R.C. 5301.28 provides in relevant part that "[w]hen the mortgagee of property * * * receives payment of any part of the money due the holder of such mortgage, * * * and enters satisfaction or a receipt therefor, either on the mortgage or its record, such satisfaction or receipt * * * will release the mortgage to the extent of such receipt." There is no release of a mortgage when the mortgagee neither signed the release nor authorized it. See Springfield Fire Marine Ins. Co. v. Wagner (1906), 74 Ohio St. 484. Further, in an action to foreclose a mortgage, the burden is on the defendant to prove by substantial evidence discharge of the debt secured by the mortgage. Carter v. Holmes (1945), 77 Ohio App. 330, 332.
A review of the agreement signed by appellant and Lawhun clearly and unequivocally shows that the agreement was solely between appellant and Lawhun, that it was solely signed by them, although it was notarized by Clara Bramel, and that it was entered for the sole purpose of making Lawhun responsible for "the entire interest payment and monthly farm payment" (allegedly the Gooselick Road house).
While appellant contends that Clara Bramel received $7,500 "interest in reconveyance" when she notarized the alleged assignment between appellant and Lawhun, there is absolutely no evidence in the record that Clara Bramel received such sum. Nor is there any evidence that appellees either received partial or total payment of the mortgage balance before the confirmation of the judicial sale of the mortgaged properties, or that they released or discharged either appellant or Lawhun of the obligation to pay under the note. As a result, appellant was never wrongfully dispossessed of the mortgaged properties as required under a writ of entry.
We therefore find that the trial court did not err in ordering foreclosure of the Brown County property and in denying appellant's writ of entry. Appellant's sole assignment of error is overruled.
YOUNG, P.J., and POWELL, J., concur.
[1] Appellees purchased the Adams County property for $75,000 while a Thomas D. Shinkle purchased the Brown County property.