In these consolidated appeals, plaintiff Claire Freeman-McCown ("Freeman-McCown") challenges jury verdicts in favor of defendants Cuyahoga Metropolitan Housing Authority ("CMHA") and the CMHA Board of Commissioners ("the Board"), both on her amended complaint and on the defendants' counterclaims. Freeman-McCown also contests the trial court's award of attorney's fees against her. She raises eight assignments of error, the text of which is set forth in the attached appendix. For the following reasons, we affirm.
 PROCEDURAL HISTORY
Freeman McCown filed her original complaint on May 27, 1998. She filed a seven-count amended complaint on May 4, 1999. The amended complaint asserted that CMHA breached its employment agreement with Freeman-McCown, CMHA's Chief Executive Officer, by failing to pay her salary and fringe benefits and by terminating her employment without pay. The amended complaint also claimed CMHA's Board of Commissioners prevented Freeman-McCown from meeting the performance elements and contract goals set forth in the agreement.
In addition to her breach of contract claims, Freeman-McCown demanded a declaratory judgment concerning the parties' rights and obligations under the contract and urged that CMHA had violated R.C. 4113.15
by failing to pay her salary and benefits. She also urged that CMHA and the Board defamed her by accusing her of disseminating false documents and records and intentionally caused her emotional distress. Finally, she alleged CMHA and its employees and agents conspired to breach their contract with her and to publish false and defamatory statements about her.
CMHA and its Board each answered separately and asserted counterclaims against Freeman-McCown. Both defendants requested a declaratory judgment that the alleged 1995 employment contract was void, that Freeman-McCown breached her obligations as Chief Executive Officer, that she converted CMHA's assets to her own use, and that she was unjustly enriched by those funds. CMHA also claimed Freeman-McCown defrauded CHMA and breached her fiduciary duties.
Both CMHA and the Board moved for summary judgment. The court denied CMHA's motion in its entirety but granted the Board's motion in part. The court concluded that the 1995 employment contract provided that Freeman-McCown would not be paid if she were dismissed "for cause" and that the evidence did not support Freeman-McCown's claim that the contract had been amended to delete this provision (allowing her to receive her salary even if she were dismissed for cause). The court found a question of fact whether Freeman-McCown's employment was terminated for cause.
The case proceeded to trial on September 21, 1999. At the close of the plaintiff's case, the court granted defendants' motion for a directed verdict on Freeman-McCown's claims for defamation, intentional infliction of emotional distress, and civil conspiracy. At the conclusion of all the evidence, the court dismissed Freeman-McCown's claims for declaratory judgment and for violation of R.C. 4113.15 and the counterclaims for unjust enrichment.
The jury returned a verdict finding in defendants' favor on the two counts of the amended complaint submitted to them. The jury also awarded defendants compensatory damages on their counter-claims for breach of contract, conversion, fraud and breach of fiduciary duty. Finally, the jury awarded the defendants punitive damages of $25,000 and attorney's fees on their fraud claim. Following a hearing, the court awarded CMHA attorney's fees of $146,730.75 plus $27,867.96 in costs; it awarded the Board of Commissioners $100,973.50 in attorney's fees and costs of $9,492.96. Freeman-McCown has timely appealed both the judgment on the jury's verdicts and the award of attorney's fees.
 FACTUAL BACKGROUND 1990 Employment Agreement. CMHA and Freeman-McCown entered into a five-year employment contract on or about April 26, 1990. Among other things, this agreement provided that CMHA would "fully reimburse [Freeman-McCown] for all expenses incurred in connection with her relocation for this position and [would] pay the reasonable cost of a relocation Firm engaged by [Freeman-McCown] to assist in her relocation activities."
Freeman-McCown claimed that this provision required CMHA to pay a portion of her mortgage on a home in Alexandria, Virginia, although CMHA did not make any mortgage payments immediately after the contract was signed. From October 1993 through April 1998, CMHA paid $1034 per month toward Freeman-McCown's mortgage payments on that property.
Society Loan. In August 1993, Freeman-McCown applied to Society National Bank for a $50,000 bridge loan. As part of her application, she submitted to Society the following letter, purportedly signed by three members of CMHA's board of commissioners and dated July 17, 1993:
 Pursuant to our agreement to implement a full relocation package included in the Employment Contract of Ms. Claire E. Freeman (Chief Executive Officer), the Board of Comissioners of the Cuyahoga Metropolitan Housing Authority hereby authorizes the Chief Operating Officer of CMHA, through the Comptroller, to quarterly pay the interest on a bridge financing on the property at 1414 Leslie Street, Alexandria, Virginia, until such time as the property is sold. It is our understandingthat Society Bank is considering bridge financing of $50,000 to $60,000.
Please contact me if you have any questions.
Very truly yours,
/s/ Karen H. Coats, Chairwoman
/s/ Dwayne Browder, Vice-chairman
/s/ Dr. Consuelo Sousa
At trial, all three of these commissioners denied signing this letter. All of CMHA's commissioners denied approving this transaction.
Society gave Freeman-McCown a one-year loan of $50,000.00. The loan term was extended until November 1995, at which time the loan was paid by CMHA.
Merrill Lynch Mortgage on Alexandria Property. In December 1993, Freeman-McCown applied to Merrill Lynch Credit Corporation to refinance her mortgage loan on the Alexandria, Virginia, property. She submitted a handwritten note to Merrill Lynch indicating:
 The Board of Commissioners approve[s] a partial payment of the mortgage as a part of my employment contract. However, the bookkeeping necessary to implement that payment has been flawed, resulting in late payments. However, as per the attached draft correspondence, I think we have worked out a method that will correct that late payment history.
Though the note indicates that a draft correspondence is attached, Merrill Lynch's records include a copy of a letter purportedly signed by Commissioners Coats, Browder, and Sousa and addressed to CMHA's chief operating officer. This letter, dated December 22, 1993 and marked as received by Merrill Lynch on the same date as the handwritten note from Freeman-McCown (December 30, 1993), states:
 Pursuant to our agreement to implement a full relocation package in accordance with the Employment Contract of Ms. Claire E. Freeman (Chief Executive Officer) during our July 17, 1993 meeting, the Board of Commissioners of the Cuyahoga Metropolitan Housing Authority (CMHA) authorized you as the Chief Operating Officer of CMHA, through the Comptroller, to pay $1,034.00 of the current total mortgage payment of $1,743.16 on the property located at 1414 Leslie Street, Alexandria, Virginia, until such time as the property is sold.
Again, all three of the commissioners denied that they signed this letter and denied approving this transaction. Freeman-McCown denied having sent this letter to Merrill Lynch. She claimed she intended to send an unsigned draft, but she did not review the content of the package actually mailed by her staff.
Merrill Lynch approved the mortgage application. As noted above, CMHA paid $1034 per month toward Freeman-McCown's payments on this mortgage through April 1998.
1995 Employment Agreement. In August 1995, the parties signed another five-year employment agreement. Unlike the 1990 agreement, this agreement did not contain a clause concerning relocation expenses.
The 1995 agreement provided that "[u]pon Execution [sic] of this Agreement any and all prior written or oral employment agreements between the parties shall terminate and be of no force and effect." It also contained the following merger clause:
 Q. Merger. Modifications are to be in Writing. All understandings and agreements heretofore or simultaneously had between the parties are merged into this Contract and are contained herein and this Contract fully and completely expresses the agreement between the parties with respect to the terms and conditions of employment of Claire E. Freeman as the Chief Executive Officer for the Cuyahoga Metropolitan Housing Authority. This Contract is not subject to modification except as provided in written modification agreed and executed by the parties and contains the entire Contract of the parties with respect to the matters covered by this Contract and no other agreement, statement, or promise made by any party to any employee, officer or agent of any party, which is not contained in this Contract shall be binding or valid.
The 1995 agreement stated that, generally, Freeman-McCown would be paid in full if her employment were terminated. However, the Board could terminate the contract, and Freeman-McCown would not be paid for the balance of her term, if she (a) resigned, (b) was convicted of a crime involving moral turpitude or such as theft in office, or (c) was dismissed for cause. Freeman-McCown's amended complaint asserted that the Board amended this provision by Resolution No. 181-95, which the commissioners purportedly adopted on September 6, 1995. This amendment removed the provision excusing payment of her salary if she were terminated for cause. The only record of the adoption of this resolution is a document signed by Freeman-McCown as secretary of the Board. There are no minutes or other corroborating evidence that the Board adopted the resolution.
In ruling on the Board's motion for summary judgment, the court held that this resolution was "not supported by any documentary evidence which would establish a meeting of the minds and/or the Board's consent or participation." The court also held that no written modification signed by the parties had been produced, as required by the unambiguous language of the merger clause.
The Board suspended and ultimately terminated Freeman-McCown from her employment.
 LAW AND ANALYSIS A. Modification of 1995 Employment Agreement.
In her first assignment of error, Freeman McCown argues that the court erred by granting the Board's motion for summary judgment in part because the 1995 employment agreement was amended by a Board resolution that deleted the provision stating she would not receive her salary if she were terminated for cause.
The plain language of the 1995 contract states that it may only be modified in writing, agreed and executed by the parties. The alleged modification advocated by Freeman-McCown here was not agreed and executed by the parties. It was (allegedly) a resolution of the Board of Commissioners and, therefore, represented only the agreement of CMHA. Furthermore, it was not executed by either CMHA or Freeman-McCown as a party to the contract; it was signed only by Freeman-McCown in her capacity as secretary of the Board, reporting the Board's proceedings. Therefore, we agree with the trial court that the Board resolution presented by Freeman-McCown did not modify the 1995 agreement. Accordingly, the first assignment of error is overruled.
 B. Contract Construction.
Freeman-McCown's next two assignments of error claim the court erred by excluding extrinsic evidence of the parties' intent in using the term "expenses of relocation" in the 1990 contract and by failing to submit the construction of this term to the jury. Freeman-McCown argues this provision is ambiguous so that its construction is a question of fact, not a question of law.
Contract construction is ordinarily a matter of law for the court.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. If contract terms are clear and unambiguous, the court cannot, "in effect, create a new contract by finding an intent not expressed in the clear language employed by the parties." Brandon/WiantCo. v. Teamor (1998), 125 Ohio App.3d 442, 447.
Courts will not look beyond the four corners of a contract in deciding whether it is ambiguous. "Generally it is presumed that the intent of the parties to a contract resides in the language they chose to employ in the agreement." Brandon/Wiant, 125 Ohio App.3d at 447.
 Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.
Alexander, 53 Ohio St.2d at paragraph two of the syllabus.
The trial court here concluded that the term "expenses of relocation" was not ambiguous and did not include mortgage payments or bridge loan payments.[1] Therefore, the court did not allow plaintiff to introduce extrinsic evidence of the parties' intent in using that term.
We agree with the trial court that the phrase "expenses of relocation" is not ambiguous, and the plain meaning of that phrase does not include either the mortgage on the employee's former residence or the principal on a bridge loan. The trial court properly rejected Freeman-McCown's effort to introduce ambiguity into the contract terms with evidence of the parties' negotiations.[2] The construction of this unambiguous contract was a matter of law, so extrinsic evidence was not necessary or permissible.
For these reasons, the court did not err by finding the 1990 contract was unambiguous and by refusing to submit the question of its construction to the jury. Accordingly, the second and third assignments of error are overruled.
 C. Manifest Weight of the Evidence.
Freeman-McCown's fourth and fifth assignments of error contend that the jury verdict awarding compensatory and punitive damages and attorney's fees to CMHA and its Board are against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence".C.E. Morris Co. V. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. We review each of the counterclaims and the award of punitive damages and fees below:
Breach of Contract/Conversion Claims. Freeman-McCown does not argue the weight of the evidence on the counterclaims for breach of contract and conversion, so we need not address those claims.
Breach of Fiduciary Duty. Freeman-McCown argues that "* * * it cannot be said * * * that the naked fact that Claire Freeman was a fiduciary, when and if she breached her contract, she should be lashed more than once for the identical breach." This argument mischaracterizes the evidence supporting the claim for breach of fiduciary duty. There was competent, credible evidence in the record from which the jury could conclude that Freeman-McCown engaged in self-dealing by arranging for payment of more than $120,000 in personal debts with CMHA assets. This evidence goes beyond a simple claim that she breached her contract and supports the verdict on the claim for breach of fiduciary duty.
Fraud. Freeman-McCown next argues the verdict finding her liable for fraud was against the manifest weight of the evidence. To succeed on a claim for fraud, the proponent must prove the opposing party knowingly made a misrepresentation of a material fact, upon which the proponent actually and justifiably relied and was damaged as a direct result of that reliance. Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49.
Freeman-McCown asserts the evidence does not support the fraud claims forth in the pleadings. These claims are limited to the contention that Freeman-McCown fraudulently induced CMHA and its Board to amend the 1995 contract and delete the provision regarding termination for cause. However, the fraud claims actually tried to the jury were not limited to the claim set forth in the pleadings. See Civ.R. 15(B). At trial, CMHA and its Board argued Freeman-McCown defrauded them by creating false documents purporting to authorize CMHA to pay monies on her behalf, including mortgage payments and the principal on her bridge loan. The court instructed the jury on this fraud claim. The fraud claim we must consider is the one actually tried to the jury, not the one set forth in the pleadings. We find there was competent, credible evidence that Freeman-McCown created false documents purporting to authorize CMHA to pay funds on her behalf and that CMHA employees made payments of more than $120,000 in reliance on these documents.
Therefore, the jury verdict on the fraud claim does not contravene the manifest weight of the evidence.
Punitive damages. Freeman-McCown claims punitive damages were inappropriate because the jury found no evidence of malice. The jury was instructed that it could award punitive damages if it found Freeman-McCown acted with "fraud, insult, or actual malice." Freeman-McCown did not object to this charge, nor does she expressly object to it here. The jury returned a verdict that found Freeman-McCown acted with fraud but not actual malice or insult and awarded punitive damages of $25,000.00.
We agree with Freeman-McCown that punitive damages may be awarded in a fraud case only if the plaintiff establishes both the fraud, itself, and either (1) that the fraud is aggravated by the existence of malice or ill will or (2) that the fraud is particularly gross or egregious. CharlesR. Combs Trucking, Inc. v. International Harvester Co. (1984),12 Ohio St.3d 241, paragraph three of the syllabus;Atram v. Star Tool Die Corp. (1989), 64 Ohio App.3d 388, 391.
Nonetheless, because Freeman-McCown failed to object to the incorrect jury instruction, we may reverse only if the instruction were plainly erroneous. Plain error does not exist unless, but for the error, the outcome of the trial clearly would have been otherwise. Robb v. LincolnPublishing (Ohio), Inc. (1996), 114 Ohio App.3d 595, 621. Given the egregious nature of Freeman-McCown's conduct, we cannot say the outcome of the trial clearly would have been different but for the incorrect instruction. Therefore, we find no plain error.
Attorney's Fees. Freeman-McCown argues that the award of attorney's fees was founded upon an erroneous award of punitive damages. We found no plain error in the award of punitive damages, so there is no reason to question the basis for the award of attorney's fees.
For these reasons, we overrule the fourth and fifth assignments of error.
 D. Exclusion of Testimony.
Freeman-McCown's sixth assignment of error complains that the court erroneously excluded the testimony of Ricardo Teamor and unspecified others. Her argument is unclear but appears to contend that Teamor would have testified about the parties' intent with respect to parts of her 1995 employment contract.
Freeman-McCown has not identified in the record the errors that she alleges the court made. This is sufficient ground in itself to disregard this assignment of error. App.R. 12(A)(2). Moreover, Freeman-McCown has not demonstrated that the 1995 agreement was ambiguous so that extrinsic evidence of the parties' intent would be admissible. Therefore, the sixth assignment of error is overruled.
 E. Closing arguments.
The remaining two assignments of error address alleged errors in court rulings during closing arguments. In the seventh assignment of error, Freeman-McCown asserts that the court incorrectly allowed defense counsel to argue that the jury should infer that a witness Freeman-McCown had not called would not have supported her case. Counsel are ordinarily given great latitude in closing argument. Freeman-McCown had the opportunity to respond to this argument. Therefore, we perceive no error in the court's ruling.[3]
Finally, Freeman-McCown complains that the court refused to allow her attorney to read parts of the pleadings during closing argument, in support of her assertion that the evidence did not support the fraud claim set forth in the pleadings. As discussed above, however, the case tried to the jury was more extensive than that presented in the pleadings. The court did not err by rejecting appellant's efforts to limit the claims to those stated in the pleadings.
We find no prejudicial error in the proceedings before the trial court. Accordingly, we affirm its judgment.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J. and
JOHN T. PATTON, J. CONCUR
 _________________________ JUDGE KENNETH A. ROCCO
 APPENDIX ASSIGNMENTS OF ERROR I. THE COURT ERRED WHEN IT RULED (PRETRIAL) THE ATTEMPT BY THE PARTIES TO AMEND AND/OR MODIFY AN EXPRESS PROVISION IN PLAINTIFF'S 1995 EMPLOYMENT CONTRACT WAS NULL AND VOID.
 II. THE COURT ERRED, AND DUE PROCESS WAS DENIED, WHEN THE COURT BARRED PLAINTIFF FROM SHOWING WHAT THE PARTIES MUTUALLY INTENDED AND FROM SHOWING WHAT THE PARTIES AGREED TO WITH REFERENCE TO A CRITICAL ASPECT OF PLAINTIFF'S ORIGINAL EMPLOYMENT CONTRACT, I.E., THE 1990 CONTRACT.
 III. GIVEN THAT THE CONTRACT WAS AT THE VERY LEAST "AMBIGUOUS," AS TO WHAT THE PARTIES INTENDED WITH REFERENCE TO THE POWER GIVEN PLAINTIFF TO HIRE A "RELOCATION" FIRM AND TO BE FULLY REIMBURSED FOR ALL COSTS RELATED TO HER "RELOCATION EXPENSES," IT FOLLOWS THE COURT ERRED WHEN IT FAILED TO SUBMIT THE INTENT ISSUE TO THE JURY.
 IV. THE VERDICT FINDING APPELLANT VIOLATED HER EMPLOYMENT CONTRACT AND THAT THE DEFENDANTS WERE ENTITLED TO DAMAGES ON THEIR VARIOUS COUNTERCLAIMS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW.
 V. THE VERDICT AWARDING PUNITIVE DAMAGES AND ATTORNEY'S FEES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW.
 VI. THE COURT ERRED WHEN IT REFUSED TO ALLOW PLAINTIFF TO CALL CERTAIN WITNESSES, NOTABLY ATTORNEY RICARDO TEAMOR, TO ELUCIDATE CERTAIN CRITICAL HAPPENINGS INVOLVING THE ROLES HE PLAYED IN CONNECTION WITH THE NEGOTIATIONS INVOLVING THE 1995 CONTRACT AND RELATED MATTERS.
 VII. THE COURT ERRED WHEN IT ALLOWED, AND OPENLY ENDORSED, A DEFENSE ARGUMENT THAT DIRECTED THE JURY TO DRAW AN INFERENCE AGAINST APPELLANT FOR HER FAILURE TO CALL ONE RONNIE DAVIS, A PERSON WHOSE NAME WAS PROMINENTLY REFERRED TO DURING THE TRIAL.
 VIII. THE COURT ERRED WHEN IT BARRED COUNSEL FROM READING THE DEFENDANTS' COUNTERCLAIM TO THE JURY AND THUS COMMENTING ON THE SPECIFIC CONTOURS OF THE COMPLAINTS MADE AGAINST PLAINTIFF FOR WHICH DAMAGES WERE SOUGHT.
[1] The court refined this ruling by indicating that interest on a bridge loan could be considered a "relocation expense."
[2] We note that the 1990 contract expressly terminated any prior written or oral agreements between the parties, so Freeman-McCown could not claim she had a separate prior contract for the payment of these expenses.
[3] Freeman-McCown claims that this error was compounded by the court's refusal to instruct the jury about missing witnesses. Though the record shows she requested such an instruction at the conclusion of the jury instructions, Freeman-McCown has not provided us with the text of her requested instructions or pointed out where they may be found in the record. Therefore, we cannot evaluate this matter. See App.R. 12(A)(2).