JOURNAL ENTRY AND OPINION
Plaintiff-appellant Christopher A. Stegawaski, M.D (Stegawaski), a shareholder of West Shore Anesthesia Group, Inc. (WSAG), on behalf of himself and all other shareholders of WSAG, appeals from the trial court's granting of summary judgment in favor of the following defendants-appellees: (1) Columbia St. John West Shore Hospital (Hospital); (2) Frederick DeGrandis. (DeGrandis)[1]; (3) Pankad Shah, M.D.; and (4) Moises Buzon, M.D. . For the reasons adduced below, we reverse and remand.
A review of the record on appeal indicates that the heart of this action concerns a written contract (Contract) between WSAG, an anesthesiology service provider, and the Hospital. By virtue of this Contract, WSAG became the exclusive anesthesiology provider to the Hospital.[2] The stated term of the Contract was forty-two (42) months, commencing on January 1, 1993, with automatic successive one-year renewal periods. See Section 24(a) of the Contract.[3] Appellant argues that the Contract began on October 4, 1993, the execution date of his employment services contract with WSAG. This belief causes a significant difference in the renewal periods and the expiration of the Hospital Contract.[4]
The parties agree that either party to the Hospital Contract could elect not to renew the Contract provided that the other party was given no later than one hundred and twenty (120) days (which is approximately equivalent to four months) written notice of the intent not to renew prior to the expiration of the then-current term. Id. Thus, according to appellees, the original term of the Contract would expire on June 30, 1996 (42 months from January 1, 1993). An automatic one-year extension period of the Contract then ran from July 1, 1996, through June 30, 1997.
By letter dated August 3, 1996 (over three hundred days prior to the June 30, 1997 end of the then-current term) the Hospital notified WSAG of its intent not to renew the Contract and that the Hospital intended to seek proposals from others, including WSAG, for the provision of anesthesiology services to the Hospital commencing July 1, 1997. There is no debate that WSAG received this letter within days, at most, of the non-renewal letter being written.
The Hospital terminated its services contract with WSAG effective at the end of June 30, 1997, and commencing July 1, 1997, contracted with another anesthesiology group, Ohio Anesthesia Ltd., Inc. (OAL), to provide anesthesiology services to the Hospital. Drs. Shah and Buzon, who were shareholders of WSAG, and had been contractually employed by WSAG, left the employment of WSAG upon the termination of the Hospital Contract (June 30, 1997) pursuant to Section 4(A)(1) of their employment contracts, and became employed by OAL effective July 1, 1997.[5]
Dr. Stegawaski filed his original Complaint on March 2, 1999, alleging the following causes of action against a number of parties including the appellees herein. The causes of action against the appellees herein consist of the following: (1) breach of contract by the Hospital and DeGrandis for allegedly prematurely terminating the Hospital Contract in an improper manner without cause; (2) tortious interference with contract and business expectancy by Drs. Shah and Buzon in their diverting their resources and energies to a competing anesthesiology group in violation of their employment contract with WSAG; (3) breach of employment contract by Drs. Shah and Buzon in their failing to provide their exclusive services to WSAG during the term of the employment contract in violation of Section 9 therein[6]; (4) breach of fiduciary duty by Drs. Shah and Buzon as to WSAG; (5) derivative action against Drs. Shah and Buzon for their allegedly diverting WSAG assets (to-wit, the professional services of Drs. Shah and Buzon) to OAL during the term of their employment by WSAG; and (6) a violation of the Valentine Antitrust Act, R.C. 1331.01, by the Hospital in limiting anesthesiology services provided to the Hospital to OAL.[7]
Subsequent to discovery, the Hospital and DeGrandis filed for summary judgment on December 12, 1999. Dr. Stegawaski filed a brief opposing this motion for summary judgment on January 3, 2000. Thereafter, on January 18, 2000, Dr. Stegawaski voluntarily dismissed the breach of contract claim against DeGrandis and the Valentine Act claim as to all defendants. On February 18, 2000, Dr. Stegawaski supplemented his opposition to the Hospital's motion for summary judgment and also a motion for leave to file a motion for summary judgment relative to the first and second causes of action. On April 7, 2000, Drs. Shah and Buzon filed their motion for summary judgment. On May 8, 2000, Dr. Stegawaski filed a combined motion for summary judgment against Drs. Shah and Buzon and a brief in opposition to the summary judgment motion of Drs. Shah and Buzon.
The trial court, on May 18, 2000, granted the defendants' motions for summary judgment after finding that the contracts in issue (the Hospital/WSAG contract, and the employment contracts between WSAG and its member anesthesiologists) were not ambiguous with regard to the commencement and termination of those contracts.
Dr. Stegawaski appeals from these summary judgment rulings in favor of the defendants-appellees.
The lone assignment of error provides:
 I THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT FOR THE DEFENDANTS BECAUSE THE DEFENDANTS WERE NOT ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW, THERE WERE GENUINE ISSUES OF FACTS AND, VIEWING THE EVIDENCE IN A LIGHT MOST FAVORABLE TO THE PLAINTIFF/APPELLANT, A REASONABLE JURY COULD HAVE FOUND FOR THE PLAINTIFF.
The standard of review for a summary judgment ruling was recently stated in Post v. Harber (Feb. 16, 2001), Vinton App. No. 00CA541, unreported, 2001 Ohio App. LEXIS 664 at 7-11:
 When reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review.
 See, e.g., Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 245.
 Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786, 788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
 Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164, 1171.
 In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47.
 Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
 Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273; Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.
Moreover, with regard to contract construction, we note:
Construction of contract is a matter of law.
 Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146. Where the terms of a contract are clear and unambiguous, summary judgment proceedings are appropriate. Inland Refuse Transfer Co. v. Browning-Ferris Indus. Of Ohio Inc. (1984), 15 Ohio St.3d 321, 474 N.E.2d 271. Courts must give the contract reasonable construction in conformity with the parties' intent which intent is to be determined by the words of the contract. Dealers Dairy Products Co. v. Royal Ins. Co. (1960), 170 Ohio St. 336, 164 N.E.2d 745.
Geraci v. Conte (Nov. 22, 2000), Cuyahoga App. No. 77420, unreported, 2000 Ohio App. LEXIS 5482 at 7-8.
Also, it must be emphasized that where a contract's terms are clear and unambiguous, the trial court cannot, in effect, create a new contract by finding an intent not expressed in the clear language employed by the parties. Brandon/Wiant Co. v. Teamor (1998), 125 Ohio App.3d 442, 447.
In the action sub judice, appellant's entire argument is premised on the trial court utilizing an incorrect commencement date for the Hospital Contract, which would necessarily impact the computation of its termination date. It is appellant's belief that the Hospital Contract commenced on October 4, 1993, the date of his employment contract with WSAG, leading to the appellant's conclusion that the Hospital Contract did not expire, but was prematurely terminated without cause. Applying appellant's reasoning, the Hospital Contract would not expire on June 30, 1997, and therefore Drs. Shah and Buzon would still be employed by WSAG as of July 1, 1997, causing these physicians, and the Hospital, to be in breach of their respective contracts with WSAG on July 1, 1997.
As previously iterated above, the Hospital Contract with WSAG stated that it commenced on January 1, 1993, for a forty-two month original term and was automatically renewed from July 1, 1996, through its expiration on June 30, 1997. The Hospital more than fully complied with its obligation to provide WSAG a timely 180-day notice of its intent not to renew the Contract if this commencement date is used, as evidenced by the Hospital letter dated August 3, 1996 (over three hundred days prior to the expiration date of the Contract's then-current term). Equally important, if the January 1993 commencement date is used, the WSAG's employment contracts with Drs. Shah and Buzon automatically terminated on June 30, 1997, the date the Hospital Contract expired. As a result of the expiration of the Hospital contract, which automatically terminated the WSAG employment contracts and their limited non-compete clauses on June 30, 1997, pursuant to Section 4(A)(1) and 9 of those employment contracts, there could be no violation of any duty or obligation by the defendants-appellees.
If the October 4, 1993 commencement date is used, as advanced by the appellant, there is a question of material fact whether the Hospital Contract, and hence the physician employment contracts, expired on June 30, 1997, or whether this June 1997 termination was an improper premature termination under the Contract. The October 4, 1993 date is urged because the Hospital Contract, at Section 3(b), provided a precondition for the initiation of the Hospital Contract:
 (b) It is expressly agreed as a precondition for the initiation of this Agreement, that the [WSAG] shall offer and negotiate in good faith a reasonable employment agreement providing an employment term of two (2) years, to each anesthesiologist who has medical staff membership and privileges at the Hospital as of the signing of this Agreement and it shall diligently pursue the negotiation, in good faith, and execution of such employment agreements. It is further agreed that each such employment agreement will contain appropriate provisions or references to the duties and requirements of this Agreement. (Italicization and explanation added.)
If the Hospital Contract commenced on October 4, 1993, which is the effective date of the employment contracts between WSAG and its physician employees, the original forty-two month term would expire on April 3, 1997, with an automatic one-year renewal thereafter through April 3, 1998. The Hospital provided written notice on August 3, 1996, of its intent not to renew the WSAG/Hospital Contract; this non-renewal would be effective on April 3, 1997 (the end of the then-current Contract term using the appellant's commencement date). However, it is uncontested that WSAG did not cease its affiliation with the Hospital after April 3, 1997, but continued to provide exclusive anesthesiology services to the Hospital for approximately three more months through June 30, 1997. By continuing to provide professional services to the Hospital after April 3, 1997, there is a genuine issue of material fact whether the Hospital Contract with WSAG was extended for an additional one-year period by the conduct of the parties.[8] If this is so, there is concurrently a genuine issue of material fact with respect to the conduct of Drs. Shah and Buzon in relation to their WSAG employment contracts.
Since there are genuine issues of material fact to be resolved, summary judgment was improperly granted to the defendants-appellees.
Assignment affirmed.
Judgment reversed and remanded.
This cause is reversed and remanded.
It is, therefore, considered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
TIMOTHY E. McMONAGLE, P.J., and JAMES J. SWEENEY, J., CONCUR.
[1] DeGrandis was named as a party to the action because he was the President of the Hospital and was a signatory to the Contract on behalf of the Hospital.
[2] WSAG was incorporated in September of 1992 by three original shareholder anesthesiologists, namely, Drs. Shah and Buzon, defendants-appellees herein, and Dr. Girish Mulgoakar. Dr. Stegawaski was contractually employed by WSAG effective October 4, 1993, at which time he became a shareholder in WSAG. Drs. Shah and Buzon executed their employment agreements with WSAG on November 29, 1993.
[3] The effective date of the Hospital Contract, January 1, 1993, was also typed in capital letters on the first line at the top of the first page of the Contract.
[4] See Hospital Contract at Section 3(a)-(b).
[5] The WSAG employment contracts relative to Drs. Shah and Buzon each contained a clause at Section 4(A)(1) which expressly stated that the term of the contract shall be immediately terminated * * * upon the occurrence of any of the following events: (1) Termination of the Hospital Agreement for any reason; * * *.
[6] Section 9 of the employment contract contained a limited noncompete provision, stating in pertinent part:
 * * *. Employee covenants and agrees that for one (1) year after termination of his employment with the [WSAG], whether such termination of employment is by expiration of this Agreement, * * * or any other event of termination described in Section 4 of this Agreement, Employee shall not engage in the practice of medicine at any hospital or health care facility with which the [WSAG] has a contract to provide services, * * *, at the time of such termination; provided, however, the covenant within this sentence shall not bind Employee if the Hospital Agreement has been terminated as of Employee's termination. * * * (Italicization and explanation added.)
[7] An amended Complaint was filed on May 25, 1999.
[8] Cancellation of the Hospital Contract prior to its expiration, i.e., premature termination for cause, was permitted for a material breach of the Contract terms upon forty-five days advance notice to the offending party. See Hospital Contract at Section 24(c). In the present case, no cause was stated for the non-renewal of the Hospital Contract.